**RECORD NOS. 15-1768(L), 15-2461**

In The
# United States Court of Appeals
For The Fourth Circuit

**MARLOW HUMBERT,**

*Plaintiff – Appellant,*

v.

**MAYOR AND CITY COUNCIL OF BALTIMORE CITY; SHEILA DIXON**, former Mayor of the City of Baltimore, in her individual capacity; **BALTIMORE CITY POLICE DEPARTMENT; FREDERICK BEALEFELD**, Police Commissioner Individually and as Police Commissioner, Baltimore City Police Department; **DOMINICK GRIFFIN**, Detective Individually and as Police Officer, Baltimore City Police Department; **MICHAEL BRASSELL**, Police Officer Individually and as Police Officer, Baltimore City Police Department; **CINESE CALDWELL**, Laboratory Technician individually and as Police Officer, Baltimore City Police Department; **JOHN AND JANE DOES 1-20**, Individually and as currently unknown Police Officers, Baltimore City Police Department; **RICHARD AND JANE ROES 1-20**, Individually and as currently unknown Baltimore City Police Department Supervisors,

*Defendants – Appellees.*

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT BALTIMORE**

---

**PETITION FOR REHEARING *EN BANC***

---

Thurman W. Zollicoffer, Jr.
Sidney A. Butcher
Patrick D. McKevitt
WHITEFORD, TAYLOR & PRESTON L.L.P.
Seven Saint Paul Street, Suite 1500
Baltimore, Maryland 21202
(410) 347-9447

*Counsel for Appellee – Detective Caprice Smith*

---

**THE LEX GROUP** ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA 23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

STATEMENT PURSUANT TO RULE 35(b)(1)(B)
OF THE FEDERAL RULES OF APPELLATE PROCEDURE .............................1

INTRODUCTION AND SUMMARY OF ISSUES ARGUED................................1

ARGUMENT .............................................................................................................3

      A.    THE PANEL DECISION IS CONTRARY TO DECISIONS OF OTHER CIRCUITS BECAUSE IT FAILED TO APPLY THE PROPER QUALIFIED IMMUNITY STANDARD OF "ARGUABLE PROBABLE CAUSE" ......................................3

      B.    THE PANEL DECISION TS CONTRARY TO DECISIONS THAT WOULD HAVE ANALYZED DETECTIVE SMITH'S RIGHT TO QUALIFIED IMMUNITY ON AN INDIVIDUAL BASIS .......................................................5

      C.    THE PANEL DECISION IS CONTRARY TO DECISIONS OF THE SUPREME COURT AND THIS COURT BECAUSE DET. SMITH'S CONDUCT FALLS SHORT OF THE HIGH STANDARD FOR IMPOSING PUNITIVE DAMAGES ..........................................................................10

CONCLUSION........................................................................................................11

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASE**

*Ashcroft v. al-Kidd*,
  131 S. Ct. 2074 (2011)..................................................................................8

*Babb v. Dorman*,
  33 F.3d 472 (5th Cir. 1994) .........................................................................4

*Beauchamp v. City of Noblesville*,
  320 F.3d 733 (7th Cir. 2003) .......................................................................5

*Brescher v. Von Stein*,
  904 F.2d 572 (11th Cir. 1990) .....................................................................4

*Burritt v. Ditlefsen*,
  807 F.3d 239 (7th Cir. 2015) .......................................................................4

*Floyd v. Farrell*,
  765 F.2d 1 (1st Cir. 1985)............................................................................3

*Humbert v. Jones*,
  No. WDQ-11-0440,
  2015 U.S. Dist. LEXIS 81501 (D. Md. June 22, 2015) ..................................4

*Hunter v. Bryant*,
  502 U.S. 224 (1991).....................................................................................9

*Lee v. Sandberg*,
  136 F.3d 94 (2d Cir. 1997) ..........................................................................3

*Mays v. City of Dayton*,
  134 F.3d 809 (6th Cir. 1998) .......................................................................8

*Miller v. Prince George's County*,
  475 F.3d 621 (4th Cir. 2007) .......................................................................8

*Myers v. Morris*,
    810 F.2d 1437 (8th Cir. 1987) ........................................................................... 4

*Owens-Illinois, Inc. v. Zenobia*,
    601 A.2d 633 (Md. 1992) ................................................................................ 10

*Saucier v. Katz*,
    533 U.S. 194 (2001) .......................................................................................... 5

*Smith v. Pepersack*,
    No. 98-1842, 1999 U.S. App. LEXIS 23223,
    1999 WL 760218 (4th Cir. Md. Sept. 24, 1999) ............................................. 10

*Smith v. Wade*,
    461 U.S. 30 (1983) .......................................................................................... 10

*White v. Downs*,
    112 F.3d 512 (4th Cir. 1997) ............................................................................ 4

## **STATUTE**

42 U.S.C. § 1983 .................................................................................................. 2, 10

## STATEMENT PURSUANT TO RULE 35(b)(1)(B) OF THE FEDERAL RULES OF APPELLATE PROCEDURE

This proceeding involves a question of exceptional importance, namely, the proper standard to apply when evaluating a police officer's entitlement to qualified immunity where the existence of probable cause is at issue. As to that question, the panel decision conflicts with authoritative decisions of the United States Courts of Appeal cited in Argument Section A, which apply an "arguable probable cause" standard. By failing to apply that standard to the jury's answers to special verdict questions, the panel issued a decision that deprived Det. Smith of qualified immunity and improperly imposed punitive damages, causing a result that is contrary to decisions in other Circuits.

## INTRODUCTION AND SUMMARY OF ISSUES ARGUED

This case involves a heinous rape, the victim of which identified the Appellant, Mr. Humbert, as her attacker but later qualified that identification; the lengthy incarceration of Mr. Humbert, who ultimately was not charged with a crime after the prosecutor learned of exonerating evidence not known at the time a warrant was issued for his arrest; and an $800,000 damages award (including $500,000 in punitive damages) against retired Baltimore Police Department Detective Caprice Smith (hereafter, "Det. Smith"), who requested an arrest warrant with a reasonable belief that probable cause existed to arrest Mr. Humber based on

1

the victim's identification of Mr. Humbert in a photo array and his resemblance to both the victim's description of her attacker and the composite sketches.

Following a five-day trial, the jury found Det. Smith and two other police officers liable for malicious prosecution under 42 U.S.C. § 1983 and related state law claims. In ruling on post-trial motions, the district court applied the jury's factual findings (via answers to 18 special verdict questions) to the applicable legal standards and concluded that each of the three Appellee police officers had probable cause to arrest Mr. Humbert and were therefore entitled to qualified immunity and judgment as a matter of law. The panel reversed, reasoning:

> Viewing the evidence in the light most favorable to Humber, we therefore conclude that the statement [in the warrant application] that the victim positively identified Humbert as her attacker was false and the Officers had an obvious reason to doubt its accuracy before including it in the warrant application. As such, the inclusion of this false statement amounts to at least recklessness.

(Slip Op. at 17). The panel reasoned further that a "corrected warrant application would not have established probable cause to arrest Humbert." (*Id.* at 18). Therefore, the panel held, none of the Appellee police officers were entitled to qualified immunity. For the reasons explained below, rehearing is necessary to align the panel decision with those in other Circuits that test an individual police officer's conduct against an arguable probable cause standard, as opposed to the actual probable cause standard the panel applied.

2

## ARGUMENT

Two aspects of the panel's decision conflict with decisions of the United States Courts of Appeal cited *infra*. First, the panel failed to apply an "arguable probable cause" standard in evaluating the Appellee police officer's conduct for qualified immunity purposes. Second, the panel lumped together the conduct and knowledge of each of those three police officers, rather than evaluating qualified immunity based on the individual actions and knowledge of the individual police officer. This approach deprived Det. Smith of the protection of qualified immunity for her reasonable actions in applying for the arrest warrant, placing the panel decision in contrast with decisions of other Circuits. The result is also contrary to Supreme Court precedent that prohibits the imposition of punitive damages under these circumstances.

A. **THE PANEL DECISION IS CONTRARY TO DECISIONS OF OTHER CIRCUITS BECAUSE IT FAILED TO APPLY THE PROPER QUALIFIED IMMUNITY STANDARD OF "ARGUABLE PROBABLE CAUSE".**

In evaluating a police officer's entitlement to qualified immunity where the existence of probable cause is at issue, the majority of Circuits apply an "arguable probable cause" standard. *See, e.g., Floyd v. Farrell*, 765 F.2d 1, 5 (1st Cir. 1985) ("Seeking an arrest warrant is 'objectively reasonable' so long as the presence of probable cause is at least arguable."); *Lee v. Sandberg*, 136 F.3d 94, 103 (2d Cir. 1997) ("[W]hile the State Troopers, as stipulated, did not in fact have actual

3

probable cause to arrest the plaintiff, they certainly had 'arguable' probable cause, and accordingly, it was objectively reasonable for the State Troopers to believe that probable cause existed."); *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994) ("[T]he issue is 'not probable cause in fact but 'arguable' probable cause.'"); *Burritt v. Ditlefsen*, 807 F.3d 239, 250 (7th Cir. 2015) ("Although closely related, a determination of actual probable cause is separate and distinct from a determination of what is sometimes referred to as 'arguable probable cause' for qualified immunity purposes."); *Myers v. Morris*, 810 F.2d 1437, 1455 (8th Cir. 1987) ("The issue for immunity purposes is not probable cause in fact but 'arguable' probable cause."); *Brescher v. Von Stein*, 904 F.2d 572, 579 (11th Cir. 1990) (same) (internal citations omitted throughout).

As the district court noted, "[t]he Fourth Circuit Court of Appeals has not used the phrase 'arguable probable cause'; however, the Fourth Circuit has stated that qualified immunity 'is not contingent upon whether probable cause actually existed.'" *Humbert v. Jones*, No. WDQ-11-0440, 2015 U.S. Dist. LEXIS 81501, at *36 (D. Md. June 22, 2015) (quoting *White v. Downs*, 112 F.3d 512 (4th Cir. 1997)). The panel, in failing to address the possibility that Det. Smith could have had *arguable* probable cause to write the warrant application in the manner she did even if such probable cause was in fact lacking once the "positively identified" language was excised from the warrant application, issued a decision that is

4

contrary to decisions of a majority of Circuit Courts which have held that police officers are entitled to qualified immunity under these circumstances.

Det. Smith incorporates the additional arguments on this point raised in the Petitions of co-Appellees, Major Chris Jones and Officer Dominick Griffin.

**B.    THE PANEL DECISION IS CONTRARY TO DECISIONS THAT WOULD HAVE ANALYZED DETECTIVE SMITH'S RIGHT TO QUALIFIED IMMUNITY ON AN INDIVIDUAL BASIS.**

The panel deviated from the long-standing practice of evaluating the constitutionality of actions by police officers and their entitlement to qualified immunity based on the specific actions and knowledge of the individual police officer, not the cumulative actions or knowledge of a group of officers. The proper question as to Det. Smith is whether, *at the time she wrote the arrest warrant*, she either (a) had *arguable* probable cause to believe that Mr. Humbert had committed the offense; or (b) reasonably believed that omission of the victim's qualified identification would not negate probable cause. *Cf. Saucier v. Katz*, 533 U.S. 194, 202 (2001) (qualified immunity inquiry asks "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."); *Beauchamp v. City of Noblesville*, 320 F.3d 733, 743 (7th Cir. 2003) ("In determining whether information submitted to a judicial officer in support of a warrant application was sufficient to establish probable cause, we look only at what the officer knew at the time he sought the warrant, not at how things turned

5

out in hindsight."). Because, applying that question to the facts described below, it was objectively reasonable for a police officer in Det. Smith's position to write the warrant application in the manner she did, her conduct did not violate a clearly established right of Mr. Humbert.

Only the following facts should have been considered as to Det. Smith: On May 5, 2008, the victim informed Det. Smith that she could not identify a person of color using a black-and-white printout. (Slip Op. at 6). On May 8 Det. Smith participated in showing the victim a photobook containing color photographs, and, according to the jury, upon seeing Mr. Humbert's photograph, the victim: had a strong emotional reaction; jabbed at the photo; said "that's him," without prompting; pushed the photo away; signed her name above and on the back of the photo; and wrote "that's him" on the back of the photo. (Slip Op. at 6, 10) (citing J.A. 210-213, 219-21, 227-29). The victim also stated before Det. Smith applied for the warrant that she could not positively identify Mr. Humbert as her attacker unless she saw him in a physical lineup and heard his voice. (*Id.* at 6, 11) (citing J.A. 213, 221, 229). Because BPD procedure did not permit the use of physical or voice lineups, either of those devices would have required a warrant. (*Id.* at 6 n.1); (J.A. 636-37). Thus, the victim's requests were beyond the standards for suspect identification regularly employed by Det. Smith. The next day Det. Smith applied for an arrest warrant and stated in part that the victim "positively identified" Mr.

6

Humbert as her attacker, (*id.* at 7), but omitted the victim's subsequent reservations about his identity. (*Id.* at 16-17).

The following facts *should not* have been considered as to Det. Smith in support of the panel's conclusion that the warrant application included materially false statements and that Det. Smith had reason to doubt the accuracy of the victim's identification. Unbeknownst to Det. Smith at the time she requested the warrant, Jones had several days prior suggestively shown a cellphone picture of Mr. Humbert to the victim. (*Id.* at 16-17). Unbeknownst to Det. Smith at the time she wrote the warrant application, Jones repeatedly asked the victim whether her attacker was homeless and informed the victim that Humbert was homeless at the time he was stopped. (*Id.* at 17). The panel reasoned that Det. Smith's "failure to mention these facts was reckless[,]" (*id.* at 19), but the record indicates that Det. Smith *did not know* of those facts at the time she wrote the warrant application. (J.A. 267-68) ("[T]he Victim testified that she became upset when she saw Humbert's photograph because he looked like Jones's cellphone picture . . . ***Crucially, however, there is no evidence that the Victim communicated the apparent partial source of her distress to Smith or Griffin***.") (emphasis added)

The panel's qualified immunity analysis improperly imputes to Det. Smith what it described as "Jones's suggestive conduct," overlooking that there was no evidence Smith knew of this suggestive conduct when she requested the warrant.

7

(*Id.* at 18, 28). With the taint of Jones's conduct removed, the proper question is whether, in applying for a warrant for his arrest, Det. Smith reasonably relied on the victim's imperfect identification of Mr. Humbert from a photo book and Mr. Humbert's resemblance to both the victim's description of her attacker and the composite sketches. (*Id.* at 18) (listing elements (5) and (6) of a corrected warrant application).[1]

The panel's nuanced distinctions of the authorities cited in the Joint Brief of Appellees, *compare* (Doc. No. 56 at 30 & n.5), *with* (Slip Op. at 18-20), suggests, *at a minimum*, that Det. Smith's reliance did not violate a clearly established right. *Cf. Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998) ("Because the consequences of arrest or search are less severe and easier to remedy than the consequences of an adverse criminal verdict, a duty to disclose potentially exculpatory information appropriate in the setting of a trial to protect the due process rights of the accused is less compelling in the context of an application for a warrant."). Moreover, the jury found that a reasonable officer in Det. Smith's

---

[1]   The panel's formulation of the clearly established rule in *Miller v. Prince George's County* that it is unconstitutional to make material representations or omissions in a warrant application that would otherwise be without probable cause took too general a view of Det. Smith's conduct. (Slip Op. at 27) (citing 475 F.3d 621, 627 (4th Cir. 2007). The doctrine of qualified immunity requires a more particularized and fact-specific analysis. *See Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2084 (2011) (noting that the Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality.").

8

position <u>would</u> <u>have</u> <u>believed</u> that Mr. Humbert resembled both the victim's description of her attacker and the composite sketches. (Slip Op. at 9) (citing Verdict Sheet questions A and B). At worst Det. Smith "reasonably but mistakenly concluded" that the manner in which she drafted the warrant application was proper. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

Det. Smith's conduct is precisely the type the doctrine of qualified immunity is intended to protect, not the transgression of a bright line that can expose her to personal liability for compensatory and punitive damages. By imputing to Det. Smith the conduct and knowledge of her fellow officers, the panel deprived Det. Smith of an independent testing of her individual conduct against the appropriate standard of arguable probable cause.

The panel failed to give isolated consideration to actions of Det. Smith, untethered from the separate actions and independent knowledge of Det. Jones, and failed to test those actions against the proper standard of arguable probable cause. Its decision is therefore contrary to the authorities herein. Consideration of this issue by the full court is necessary to secure uniformity of qualified immunity decisions in this Court with those in the majority of other Circuits applying the arguable probable cause standard.

**C.    THE PANEL DECISION IS CONTRARY TO DECISIONS OF THE SUPREME COURT AND THIS COURT BECAUSE DET. SMITH'S CONDUCT FALLS SHORT OF THE HIGH STANDARD FOR IMPOSING PUNITIVE DAMAGES.**

Punitive damages are available in § 1983 actions only for "reckless or callous disregard for the plaintiff's rights, [and] intentional violations of federal law." *Smith v. Wade*, 461 U.S. 30, 51 (1983); *accord*, *Smith v. Pepersack*, No. 98-1842, 1999 U.S. App. LEXIS 23223, at *12-13, 1999 WL 760218, at *5 (4th Cir. Md. Sept. 24, 1999).  The panel reasoned that Det. Smith's "failure to mention these facts"—referring to Jones's "suggestive conduct" of which she was not aware—"was reckless."  (Slip Op. at 19).  As explained above, however, if Det. Smith's conduct is (1) measured individually based on her personal knowledge at the time she wrote the arrest warrant; and (2) tested against the proper arguable probable cause standard, then her failure to mention facts of which she had no knowledge *could not have been reckless*.  Accordingly, the result here conflicts with the Supreme Court's exacting standard for the imposition of punitive damages in civil rights litigation.[2]

---

[2]    To the extent the jury's award of punitive damages relates to any of the state law claims, those claims carry an even higher standard under Maryland state law. *Owens-Illinois, Inc. v. Zenobia*, 601 A.2d 633, 652, 657 (Md. 1992) (Punitive damages are available only when the plaintiff proves, by "clear and convincing evidence," that the defendant acted with "actual malice"—that is, "evil motive, intent to injure, ill will, or fraud.").

10

## **CONCLUSION**

Det. Smith's liability hinges on her inclusion in the warrant application that the victim "positively identified" Humbert as her attacker, and omission of the victim's qualification that she needed to see him in a physical lineup and hear his voice to make a positive identification. Additional facts which might have cast further doubt on the victim's less-than-positive identification were not known to Det. Smith at the time she requested the warrant. Judged solely on her individual actions and knowledge at that time, not the cumulative actions or knowledge of her fellow officers, Det. Smith had at least arguable probable cause to believe that Mr. Humbert had committed the offense or that omission of the victim's qualified identification would not negate probable cause. Accordingly, Appellee, Detective Clarice Smith, respectfully petitions this Court for a rehearing en banc to further explain why, weighed against the proper "arguable probable cause" standard, she is entitled to qualified immunity.

August 21, 2017                          /s/ Thurman W. Zollicoffer, Jr.
                                                    Thurman W. Zollicoffer, Jr.
                                                    Sidney A. Butcher
                                                    Patrick D. McKevitt
                                                    WHITEFORD, TAYLOR & PRESTON L.L.P.
                                                    Seven Saint Paul Street, Suite 1500
                                                    Baltimore, Maryland  21202

                                                   *Attorneys for Appellee,*
                                                     *Detective Caprice Smith*

# **CERTIFICATE OF COMPLIANCE**

1. This petition complies with the type-volume limitation of Fed. R. App. P. 35(b)(2)(A) because:

   [ X ] this petition contains [*2,628*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [   ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2016*] in [*14pt Times New Roman*]; *or*

   [   ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated: August 21, 2017                              /s/ Thurman W. Zollicoffer, Jr.
                                                    *Counsel for Appellee,*
                                                      *Detective Caprice Smith*

## **CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on this 21st day of August, 2017, I caused this Petition for Rehearing *En Banc* to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all counsel of record as registered CM/ECF users.

/s/ Patrick D. McKevitt
*Counsel for Appellee,*
  *Detective Caprice Smith*